## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

**ROBERT EDWARD SNEED**                                                                                        **PLAINTIFF**

**v.**                                                                              **CIVIL ACTION NO. 3:14CV-P571-JHM**

**KENTUCKY STATE REFORMATORY MEDICAL**
**IN SEGREGATION** *et al.*                                                                                 **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

      Plaintiff Robert Edward Sneed filed a *pro se*, *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 (DN 1). Thereafter, he filed three letters (DNs 8, 9 & 10). The Court construes the letters as motions to amend the complaint and **GRANTS the motions to amend** (DNs 8, 9 & 10). *See* Fed. R. Civ. P. 15(a)(1)-(2). He also filed an affidavit (DN 13) raising matters occurring since the filing of the complaint. The Court construes the affidavit as a motion to supplement, *see* Fed. R. Civ. P. 15(d), and **GRANTS the motion to supplement (DN 13)**. Lastly, he filed a motion to amend the complaint (DN 17). The Court **GRANTS the fourth motion to amend (DN 17)**. *See* Fed. R. Civ. P. 15(a)(2).

      Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the complaint, its four amendments, and its supplement under 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons that follow, the Court will dismiss the action.

## I. <u>SUMMARY OF CLAIMS</u>

Plaintiff is a convicted inmate currently incarcerated at the Kentucky State Reformatory (KSR).  In the caption of the complaint, as Defendant, he names "Kentucky State Reformatory Medical in Segregation [] At Kentucky State Reformatory."  In the parties' section of the complaint form, he names "Segregation Medical . . . Doctors And Nurses at Kentucky State Reformatory" and "Guard's over Segregation."  He sues Defendants in their individual and official capacities.

*Complaint (DN 1)*

In the complaint, Plaintiff alleges as follows:

> I . . . was in segregation 1 – one- R03 in June of 2014 when [KSR] put Danny Burkeen in segregation 1 – one-R04 in June of 2014 Danny Burkeen had M.A.R.S.A.[1] a fleash eating "deaease" not sure of spelling I cought that from Danny Burkeen I putt in a medical slip, First one of the nurses told me I had jock each, They took a culture it came back and said probale yeast Now I was married I know a woman can get yeast but not a man . . . . The way the Medical Department treated me was to give me some save for jock each in fact the Medical Department in segragation at [KSR] does not no what ive cought from Danny Burkeen He got transferd to Little Sandy C.C. yesterday But he told me he would be a witness for me as to him having M.A.R.S.A.

Plaintiff additionally alleges that in KSR segregation there are bugs "as big as my thum" and spiders.  He reports being bitten by a spider in his cell.

As relief, Plaintiff seeks monetary and punitive damages.

*First and Third Amendments to the Complaint (DNs 8 & 10)*

In both amendments, Plaintiff alleges that he is "not guilty of the crime the Commonwealth of Kentucky, Harlan County . . . said [he] committed."  To his first amendment, he attaches documents, which he claims "prove without a doubt that [he] could not have committed the crime under CR-92-00197."  He states, "I understand about the one year but does

---

[1] The Court presumes Plaintiff is referring to methicillin-resistant staphylococcus aureus (MRSA).

the Commonwealth keep a innonce man in prison because of one year." In one of the attachments, he also indicates that he seeks monetary and punitive damages.

### *Second Amendment to the Complaint (DN 9)*

In this document, Plaintiff again alleges that after Inmate Burkeen, who purportedly had MRSA, was placed in a cell next to Plaintiff, Plaintiff filled out a medical slip and then the following events occurred:

> First a Nurse came on Segragtion 1 one and with out looking at the part of my body that was eching told Robert Edward Sneed all he had was Jock ech, Then I was sent to see Doctor KAD My provder He said along with Doctor Elaine Smith that I . . . had a yeast infection I ask for a second Doctor to look at the eching on my body and medical in segragtion at [KSR] said No that I . . . would have to go with and eccept what Medical in Segregation at [KSR] said the eching was, so I did not get a second Doctor to look at the eching I got while I . . . was in Medical Care in Segregation at [KSR] . . . .

Plaintiff additionally reports that he has three witnesses "as to the bad and nasty buges and spiders in segregation" at KSR.

### *Supplement to the Complaint (DN 13)*

Plaintiff alleges that on December 3, 2014, he was placed in "segregation 1 one" and was in "Seg 1 one over 6 ore 7 hours without my personal property." He continues,

> [I] ask time after time about toilet paper AND bedding I was told when thay got time out of about 30 CO work at segregation Now I ask the Hon Court out of 30 officers one did not have time to bring the plaintiff toilet paper and bedding is that no indifference Kentucky State Reformatory and Segregation are doing the plaintiff this way because plaintiff filed a law suit 314-cv-00571[.]

### *Fourth Amendment to the Complaint (DN 17)*

In his last amendment, Plaintiff seeks punitive damages in the amount of $75 million and demands a jury trial.

3

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

### III. ANALYSIS

#### A. *Official-Capacity Claims*

As state officials sued in their official capacity for damages, Defendants KSR medical employees and guards are not "persons" subject to suit under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Furthermore, official-capacity claims for damages against state officials are barred by the Eleventh Amendment to the United States Constitution. *Will*, 491 U.S. at 71; *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."). Accordingly, the official-capacity claims for damages against all Defendants will be dismissed for failure to state a claim and for seeking monetary relief from a defendant who is immune from such relief.

#### B. *Claim of Actual Innocence*

Under *Heck v. Humphrey*, 512 U.S. 477, 484 (1994), any civil rights claim which would necessarily call into question the validity of a criminal conviction is not cognizable until that conviction is reversed or otherwise vacated. The *Heck* Court held:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Heck*, 512 U.S. at 486-87 (footnote omitted). If a ruling on a § 1983 claim would necessarily imply the invalidity of any outstanding criminal judgment against the plaintiff, the § 1983 claim must be dismissed, not for lack of exhaustion of state remedies, but because it is simply not cognizable until the criminal judgment has been terminated in the plaintiff's favor. *Id.* at 487. The requirement that the prior criminal action ended favorably for the accused "'avoids parallel

5

litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant [] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.'" *Id*. at 484 (citation omitted).

In the present case, a ruling by the Court that Plaintiff is actually innocent of a prior conviction would necessarily render that conviction invalid. "[C]ivil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments . . . ." *Id*. at 486. Plaintiff gives no indication that his criminal conviction has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or has been called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254. Therefore, Plaintiff's claim of actual innocence is not cognizable in this § 1983 action and will be dismissed.

### C. Claim Regarding Medical Treatment

In the context of a § 1983 claim for inadequate medical care, prison personnel violate a prisoner's civil rights if they are deliberately indifferent to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976). However, not every claim of inadequate medical treatment states an Eighth Amendment violation. *Id.* at 105. The indifference must be substantial; that is, it must be an offense to evolving standards of decency. *Id.* at 106. A patient's disagreement with his physician over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable under § 1983. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 816 n.13 (6th Cir. 1996); *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995). The question of whether diagnostic techniques or other forms of treatment are indicated is a classic example of a matter for medical judgment. At most, a medical decision not to order an x-ray or like measures represents medical malpractice.

*Estelle*, 429 U.S. at 107. Furthermore, allegations of "inadvertent failure to provide adequate medical care" or of a negligent diagnosis or treatment of a prisoner fail to state a cause of action under § 1983. *Id.* at 105-06. Simply stated, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106.

Here, Plaintiff speculates that in June 2014 he contracted an infection from another inmate. He reports submitting a medical slip; a nurse opining that it was jock itch and dispensing salve; a culture being taken; and two doctors diagnosing him with a yeast infection. The record clearly reflects that Plaintiff received treatment. He simply disagrees with this treatment and diagnosis, and in his multiple amendments, he does not complain of any continued medical issues. "Where a prisoner has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (citations omitted).

For these reasons, the Eighth Amendment claim of inadequate medical treatment will be dismissed.

### D. Claim of Bugs and Spiders in Segregation

The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; [these] officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). In order to state a valid conditions-of-confinement claim under the Eighth Amendment, a plaintiff must allege: (1) the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and (2) the prison

7

officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991) (citation omitted).

While some courts have found that prolonged pest infestation may constitute a deprivation sufficient state a constitutional violation, *see, e.g.*, *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008), the conditions described by Plaintiff fall far short of a denial of the minimal civilized measure of life's necessities. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir.1996) (allegation of "sixteen months of infestation and significant physical harm" stated claim for inhuman conditions of confinement). He alleges that on a single occasion he was bitten by a spider, and he does not indicate that he requested or required medical treatment for this incident. He also does not allege he advised any KSR employee of the spider/bug problems in segregation or that anyone failed to take any action regarding those conditions. Although the presence of bugs and spiders in a cell would certainly be unpleasant, Plaintiff has not alleged facts rising to the level of an Eighth Amendment claim, and this claim will be dismissed.

### E. Claims Pertaining to December 3, 2014, Placement in Segregation

Plaintiff's claim that his personal property (including toilet paper and bedding) was withheld from him for six to seven hours does not state an Eighth Amendment claim given its short duration.

As to his retaliation claim, Plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

Filing a federal lawsuit is protected conduct. However, the Court concludes that KSR's withholding of Plaintiff's personal property (including toilet paper and bedding) for six to seven

8

hours fails to constitute an adverse action. Accordingly, the retaliation claim will also be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss the action by separate Order.

Date: March 12, 2015

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: Plaintiff, *pro se*
General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4414.005

9